**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DARREN BOYNTON, ET AL.,** | ) | **CASE NO.1:12CV2214** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **ALACRITY SERVICES, LLC ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Allstate Indemnity Co.,'s Motion to Dismiss (ECF # 25). For the following reasons, the Court grants Defendant's Motion.

According to the allegations in Plaintiffs' First Amended Complaint ("FAC") Plaintiffs Darren and Jennifer Boynton were insureds of Defendant Allstate Indemnity Co. ("Allstate") pursuant to a Deluxe Homeowners Policy of Insurance ("Policy"). The Deluxe Homeowners Policy provided insurance coverage for Plaintiffs' property located at 3150 Sycamore Drive, Cleveland Heights, Ohio 44118.

On or about December 10, 2008, the Sycamore Drive house flooded, resulting in significant damage. Plaintiffs made a claim on their policy and Allstate investigated, adjusted

the claim and determined the flooding was a covered event.  According to Plaintiffs' FAC, Plaintiffs and Allstate agreed to $106,175.00 for repairs.  Allstate then informed Plaintiffs they could use Allstate's Preferred Contractor Program, wherein the repairs to Plaintiffs' property would be performed by an Allstate approved contractor.

Allstate contracts with Defendant Alacrity for Alacrity's services under the Preferred Contractor Program where Alacrity serves as the general contractor, supervisor, construction coordinator and/or quality assurance representative.  Alacrity maintains a national network of credentialed contractors and retained Farrow Group to perform the repairs to Plaintiffs' house.  Alacrity and Farrow are parties to the AlacNet Master Contract ("Master Contract") which established the respective responsibilities of each.  The Master Contract (attached to the FAC) contains a provision wherein contractors such as Farrow agree to pay Alacrity 2.8% of any Work Order.  Work Orders are issued through the AlacNet and specify the work to be done on behalf of an insured.  Work orders are issued at the sole discretion of Alacrity.  Paragraph 9 of the Master Contract between Alacrity and Farrow states:

> The CONTRACTOR (Farrow) acknowledges and agrees the acceptance of an electronically transmitted Work Order shall act as the Contractor's agreement to perform the work in accordance with the Contract Documents, and constitutes a binding contract for the CONTRACTOR to faithfully execute the Work Order for the firm fixed price contained therein.

The Contract Documents are defined by the Master Contract as the Master Contract, the General Terms and Conditions and each Work Order.  According to the FAC, Alacrity issued Work Order No. 1 to Farrow to perform the repairs.  (FAC ¶ 9).  The Work Order (attached to the FAC) reads in pertinent part:

> the Contractor agrees to furnish, in accordance with the provisions of the Master

2

>Contract and Contract Documents incorporated therein, all of the work described in the Contractor's Work Order Scope of Work, attached, which is incorporated herein by this reference, for a lump sum price of $106,175,50.

Also attached to the FAC is a Property Owner's Authorization signed by Plaintiff Darren Boynton. The Authorization authorizes the Contractor to perform the work described in the Work Order, acknowledges that the Insurer will pay for the covered loss by joint check to the property owner and Contractor, and acknowledges that the Work Order only applies to covered work under the Insurance Policy. Farrow began work on January 15, 2009, but according to Plaintiffs, negligently performed the repairs. Allstate paid the agreed upon amount for repairs to Alacrity. Alacrity then retained 2.8% of the insurance proceeds and provided the rest to Farrow for the repairs without Plaintiffs' knowledge or consent. Since that time, Allstate and Plaintiffs have attempted to correct the negligently performed repairs. According to Plaintiffs, Alacrity's withholding its fee reduces the amount of settlement proceeds Plaintiffs are entitled to and reduces the amount available to the contractor to perform the agreed upon repairs, depriving Plaintiffs of the benefits to which they are entitled under their Policy.

Plaintiffs' FAC alleges causes of action for: 1) Breach of Contract against Allstate, 2) Breach of Contract against Allstate and Alacrity, 3) Conversion against Allstate and Alacrity, 4) Equitable Restitution against Allstate and Alacrity, 5) Fraud against Allstate and Alacrity, 6) Constructive Fraud against Allstate, 7) Breach of Fiduciary Duty against Allstate, 8) Breach of Good Faith and Fair Dealing against Allstate, 9) Constructive Trust against Allstate and Alacrity, 10) Declaratory Relief against Allstate and Alacrity, and 11) Unjust Enrichment against Allstate and Alacrity.

**Civil Rule 12(b)(6) Standard**

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  The court need not, however, accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation. *Id.* at 555.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.  A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. *Id.*  Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007)).  That is, "*Iqbal* interpreted *Twombly* to require more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for relief."  *Weisbarth*, 499 F.3d at 542.  A complaint should be dismissed when it fails to allege "enough

4

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Defendant Allstate's Motion to Dismiss**

Allstate contends that Plaintiffs' claims lack a cognizable basis for recovery of the alleged 2.8% payment retained by Alacrity.  Plaintiffs have no right under the insurance contract to the 2.8%, since the Policy allows the insurer, Allstate, to choose whether it will repair, replace, rebuild or pay cash to insureds for claims under the Policy.  Neither side disputes that the repair option was chosen under the Policy.  Furthermore, the damages fell below the policy limits therefore, the policy proceeds were sufficient to cover all needed repairs and Plaintiffs cannot plausibly assert any damages.

Allstate further argues that Plaintiffs' claims fail as a matter of law because Plaintiffs' claims were brought outside the one year limitation period set forth in the Policy.  According to Allstate, such limitation clauses are enforceable under Ohio law.  Since the FAC contends the date of loss (i.e. the water damage) occurred December 10, 2008, Plaintiffs claims are time barred since  Plaintiffs instituted this action on July 9, 2012, more than three years after the loss.

Allstate claims Plaintiffs Fraud claims fail as a matter of law because they fail to plead with sufficient specificity the who, what, where, when and how and also fail to plead reliance on a fraudulent representation by Allstate.  Also, Plaintiffs have failed to allege any duty owed Plaintiffs by Allstate beyond contractual duties.  Without some duty to disclose, which Plaintiffs do not allege, Plaintiffs' claims for Fraud and Breach of Fiduciary Duty fail as a matter of law.  Since Ohio does not recognize the imposition of a fiduciary duty owed an insured by an insurer, no Breach of Fiduciary Duty claim exists.

Allstate further contends Plaintiffs cannot plead an Unjust Enrichment claim where the

parties' contract controls.   The same argument applies to Plaintiffs' claim for Equitable Restitution.  Finally, Allstate contends that Plaintiffs' Constructive Trust claim fails because Constructive Trust is a remedy, not a cause of action.

**Plaintiffs' Opposition to Allstate's Motion**

Plaintiffs oppose Allstate's Motion to Dismiss contending that the date of loss is not the date of the water damage, December 10, 2008.  Rather, Plaintiffs' claim injury from Allstate's payment to Alacrity 2.8% of the amount intended to be used to effect repairs on Plaintiffs' home.

Plaintiffs also claim to be third party beneficiaries of the Master Contract between Alacrity and its contractors.  The Master Contract contains no limitations period.

The heart of Plaintiffs' claim is that once they suffered water damage to their property, Allstate adjusted the claim and determined it was a covered loss.  It estimated the damages, provided a detailed itemization and arrived at a repair value of $106,175.50.  By allowing Alacrity to withhold 2.8%, Plaintiffs were deprived of the proceeds of the Policy and the benefit of the bargain under the Master Contract.

There is no dispute that Allstate insured Plaintiffs, that the underlying property damage was covered under the Policy, and that Allstate issued payment for the repair of Plaintiffs' property.

The Court will address Allstate's arguments as follows:

**Plaintiffs lack standing to assert their claims because they have not alleged any concrete harm**

According to Allstate, Plaintiffs cannot plausibly allege any concrete harm resulting from Alacrity's withholding its 2.8% fee from the amount issued by Allstate to Farrow Group to effect

repairs to Plaintiffs' property.  Under Plaintiffs' theory, Plaintiffs were deprived of the benefit of the bargain because the parties agreed that the damage to Plaintiffs' property was $106,175.50. By withholding 2.8% of the monies for its fee, Plaintiffs lost $2972.91 from the agreed upon value of Plaintiffs' loss.

In Ohio, in order to prevail on a breach of contract claim a plaintiff must prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Powell v. Grant Med. Ctr.* (2002), 148 Ohio App.3d 1, 10.

Plaintiffs attached to their FAC the applicable policy, which contains the following language:

> **Our Settlement Options**
>
> In the event of a covered loss, **we** have the option to:
>
> a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or
>
> b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5 "How We Pay For A Loss."

(Policy at 15, ¶ 4.)

There is no dispute the Policy gives Allstate the option to repair or pay.

Plaintiffs' Breach of Contract claim alleges Allstate "wrongfully agreed, authorized and/or ratified Alacrity to withhold for itself, upon information and belief, 2.8% (or more) of the total insurance claim settlement proceeds owed by Allstate to Plaintiffs and the other Putative Class members..." (FAC ¶79).  Plaintiffs' Breach of Contract claim at Count 1 continues:

> 80. By doing so, Defendant Allstate breached its duty owed to Named Plaintiffs and the Putative Class to pay all benefits and proceeds due and owing to the Named Plaintiffs and the Putative Class Members to which they are entitled under

7

>the Policy.
>
>81. Further by doing so, Defendant Allstate breached its duty to Named Plaintiffs and the Putative Class Members by diminishing the value and limits of liability that Named Plaintiffs and the Putative Class Members are entitled to under the Policy.
>
>82. Defendant Allstate further breached its contract with the Named Plaintiffs and the Putative Class Members by improperly and wrongfully agreeing, authorizing and/or ratifying Alacrity to withhold 2.8% or more of the insurance settlement proceeds due and owing to the Named Plaintiffs and the Putative Class Members, which was to the financial, economic and contractual detriment of the Named Plaintiffs and the Putative Class Members. This financial detriment includes, upon information and belief, and is not limited to, the artificial increase of Named Plaintiffs' and the Putative Class Members claims experience which will, does and/or has resulted in Named Plaintiffs and the Putative Class Members being subjected to higher insurance rates and/or premiums.

As Allstate points out, the plain language of the Policy does not confer a contractual right to Plaintiffs for monies or proceeds to repair, rebuild or replace the damaged property. The Policy gives Allstate the option to pay or repair, rebuild or replace. Plaintiffs' claims allege the damages are the 2.8% fee allegedly deducted by Alacrity from the amount issued by Allstate to the contractors engaged to perform repairs. That 2.8% fee is not found in any contract between Allstate and Alacrity, nor is it disclosed in the Policy between Allstate and its insured. Although Plaintiff's FAC alleges that Alacrity's 2.8% fee "is a claims administrative costs that Allstate is obligated to pay Alacrity for the services Alacrity allegedly provides Allstate for its insurance claim services" (FAC ¶ 34), the Master Contract attached to Plaintiffs' FAC places the obligation on the ***contractor*** to pay Alacrity's fee, belying Plaintiffs' allegation that it is Allstate's obligation.  See *HMS Prop. Mgmt. Group, Inc. v. Miller,* 69 F.3d 537 (6th Cir.1995) ("[A] court may disregard allegations contradicted by facts established in exhibits attached to the pleading.") Instead, the 2.8% fee is a contracted-for obligation found in the Master Agreement

between Alacrity and its contractors.  In exchange for being listed in the AlacNet list of approved contractors, the contractors agree to pay Alacrity 2.8% of any Work Order.  (ECF 23-4 pg. 2).   There is no obligation by Allstate to pay Alacrity the 2.8% fee in the Policy.  Regardless of how Alacrity take its fee, there is no contractual obligation by Allstate in its Policy to pay Alacrity's fee.

According to Plaintiffs, the gravamen of its damages claim against Allstate is found in paragraph 53 of their FAC which reads:

> Upon information and belief, when Allstate settles a claim with an insured, such as Plaintiffs herein, it wrongfully pays the amount of the claims proceeds and/or fixed price of the Work Order under the Master Agreement directly to Alacrity, who in turn pays the Contractor the amount of the settlement proceeds/Work Order less Alacrity's 2.8% fee without the knowledge and/or consent of the Policyholder, thus depriving the Policyholder its entitlements under the Policy and the benefit of the bargain under the Master Contract.

However, the FAC fails to allege a concrete injury arising from Plaintiffs' contractual relationship with Allstate.  This failure to plead a concrete injury ultimately is fatal to Plaintiffs' claims against Allstate.  First, the Policy clearly gives Allstate the option to pay or repair, rebuild or replace the damaged property.  Therefore, Plaintiffs' claim that they are entitled to proceeds fails per the plain language of the Policy.   Plaintiffs would only be entitled to recover damages if Allstate failed to repair, rebuild or replace Plaintiffs' property with "property of like kind and quality within a reasonable time."  However, Plaintiffs have expressly rejected such a claim.  At paragraph 12 of the FAC Plaintiffs claim "the alleged one (1) year contractual statute of limitations in the Allstate Policy is inapplicable to the facts and circumstances surrounding Plaintiffs' Complaint, as the damages alleged herein do not constitute a "loss" or "damage", i.e "property damage" or "bodily injury" as defined under the Policy."  In fact, nowhere in the FAC

9

do Plaintiffs allege that they failed to receive repairs, replacements or rebuilds of like kind and quality and the FAC utterly fails to allege that Alacrity's 2.8% fee resulted in failure to repair, replace or rebuild Plaintiffs' property with goods of like kind and quality.

Pursuant to the United States Supreme Court's holdings in *Twombley* and *Iqbal,* Plaintiffs' FAC must state claims that are plausible on their face. Given the clear language of the Policy, Plaintiffs cannot state a plausible claim for proceeds under the Policy when both sides unequivocally confirm repairs were chosen instead of direct payment. (See FAC ¶ 14-19). Therefore, Allstate's only obligation under the Policy was to repair Plaintiffs' property with goods of like kind and quality.  Because Plaintiffs FAC fails to allege that Alacrity's retention of 2.8% fee resulted in repairs to Plaintiffs' property that were not of like kind and quality, Plaintiffs' claims fails as a matter of law as to Allstate under its Policy and is ultimately fatal on all Plaintiffs' claims against Allstate.

Plaintiffs also fail to allege concrete injury arising from an obligation imposed on Allstate under the Master Contract.  Allstate is not a signatory nor a party to the Master Contract. On its face the Master Contract's opening paragraph reads:

> THIS AGREEMENT is between Alacrity Services LLC, (hereinafter the NETWORK ADMINISTRATOR) and The Farrow Group...

Thus, its provisions, which are silent as to amounts owed, specific work to be performed, etc., place no obligations on Allstate and grants no rights to Plaintiffs (who are also non-parties to the Master Contract) that would be enforceable against Allstate.  Plaintiffs argue that both Allstate and Plaintiffs are third-party beneficiaries to the Master Contract.  Plaintiffs ask the Court, in essence, to allow one possible third-party beneficiary to sue another possible third-party beneficiary for breach of contract. However, since the Master Contract imposes no

obligation on the insurer and contains no promises made by Allstate for Plaintiffs' benefit, Plaintiffs cannot plausibly allege a breach by Allstate of the Master Contract. Therefore, Plaintiffs' breach of the Master Contract claim fails against Allstate.

Plaintiffs' Conversion claim against Allstate also fails as a matter of law. In Ohio, Conversion "is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. Gen. Motors Corp.,* (1990) 49 Ohio St.3d 93, 96. In order to establish a claim for Conversion a plaintiff must demonstrate the following elements: "(1) defendants' exercise of dominion or control (2) with regard to the plaintiff's personal property (3) exercised wrongfully in denial of, or under a claim inconsistent with, the plaintiff's rights. (Citation omitted). In addition to these basic definitional elements, "[a] demand and refusal in a conversion action are *usually* required to prove the conversion of property otherwise lawfully held." *Cozmyk Enterprises, Inc. v. Hoy* No. 96-APE10-1380, 1997 WL 358816, 4 (Ohio App. 10 Dist., June 30,1997).

Plaintiffs fail to allege a plausible Conversion claim against Allstate because Plaintiffs cannot plausibly assert a right to the settlement proceeds or fixed price Work Order amounts. As previously discussed, per the Policy, Allstate had the option to pay Plaintiffs or repair, replace or rebuild the property damage. Nothing gave Plaintiffs a possessory interest or right to the settlement proceeds once repair to the damage was chosen. Under the Work Order, the Farrow Group merely acknowledges it will perform the requested work for the lump sum price of $106,175.50 and acknowledges and agrees that the Insurer will make payment to the property owner. It does not bind Allstate to pay funds to Plaintiffs. In fact, the only signatory to the

11

Work Order is Farrow.  As the FAC alleges, the Work Order was issued by Alacrity, not Allstate.  Therefore, Plaintiffs' Conversion claim fails as a matter of law against Allstate.

For the same reason, Plaintiffs' Equitable Restitution and Unjust Enrichment claims fail as a matter of law.  To succeed in an action for Unjust Enrichment, plaintiff must prove: (1) a benefit the plaintiff conferred upon the defendant; (2) the defendant's knowledge of the benefit; and (3) the impropriety of defendant's retaining the benefit conferred without rendering payment to plaintiff for same.  *Cashlink, L.L.C. v. Mosin, Inc.*, No. 12AP-395, 2012 WL 6484299, *7 (Ohio App. 10 Dist. December 13, 2012) citing *Hummel v. Hummel,* 133 Ohio St. 520, 527 (1938). "[R]ecovery under an unjust enrichment claim is unavailable where the matters in dispute are governed by the terms of an express contract." *Id.*

Plaintiffs' Unjust Enrichment claims Allstate retains a benefit by mitigating its claims loss ratio, payments and expenses by using Alacrity and agreeing, authorizing and ratifying Alacrity to withhold Plaintiffs settlement proceeds and/or Work Order amounts.  Again, the Court holds that insofar as Plaintiffs' claim a right to the settlement proceeds or Work Order amounts they did not possess, Plaintiffs' claims fail as a matter of law.  If Plaintiffs did not possess a right to the settlement proceeds, which the Court holds they do not, then Allstate's agreement, authorization or ratification of Alacrity's fee does not constitute Unjust Enrichment.  Furthermore, the FAC clearly alleges that Alacrity has retained the 2.8% of the settlement proceeds, not Allstate.  Finally, both parties agree the obligations to pay or repair were governed by a contract therefore, Allstate was not unjustly enriched.

Likewise, Plaintiffs' Fraud and Constructive Fraud claims fail as a matter of law because Plaintiffs claims are based on the allegation that Allstate "misrepresented to Named Plaintiffs

12

and the Putative Class Members, the amount of the insurance settlement proceeds and/or fixed price Work Order amounts that Named Plaintiffs and Putative Members were actually receiving for the repair, restoration and/or reconstruction work on their homes and/or properties." (FAC ¶ 110 & 118).

Under Ohio law, a plaintiff alleging fraud must prove:

> (1) a representation, or silence where there is a duty to disclose; (b) which is material to the transaction; (c) made falsely, with knowledge of its falsity, or with such utter disregard as to its truth or falsity that knowledge may be inferred; (4) with the intent to mislead another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance.

*Scotts Co. LLC v. Liberty Mut. Ins. Co.* 606 F.Supp.2d 722, 741 (S.D.Ohio,2009) citing *Williams v. Aetna Finance Co.,* 83 Ohio St.3d 464, 475 (1998).

Because Plaintiffs were not entitled to receive the settlement proceeds but were entitled only to have their damaged property repaired, rebuilt or replaced with goods of like kind and quality, Plaintiffs' Fraud and Constructive Fraud claims fail to state a claim for damages resulting from a misrepresentation made by Allstate.

Furthermore, the allegations fail to state a claim because the FAC fails to allege a plausible claim that Allstate made any representation to Plaintiffs that they were entitled to the settlement proceeds/Work Order amounts. The Policy makes no such representation and the Work Order, on its face, was not directed to Plaintiffs and do not present a representation made by Allstate to Plaintiffs. Therefore, the allegations fail under *Twombley/Iqbal* and Fed. R. Civ. P. 9 to allege with the requisite specificity the who, what, where, when and how of a fraud claim.

Because Plaintiffs' Breach of Fiduciary Duty claim also relies on the erroneous allegation that Plaintiffs had a right to the settlement proceeds, this claim must also fail as a matter of law.

13

Plaintiffs contend that Allstate had a duty to disclose the withholding of the 2.8% fee by Allstate and Alacrity. Plaintiffs' Breach of Fiduciary Duty claim alleges Allstate failed to disclose that the fee "was being taken from them" (plaintiffs). "A breach of fiduciary duty claim has three elements: (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe such duty; and (3) an injury proximately resulting therefrom." *Scotts* at 738 citing *Strock v. Pressnell,* 38 Ohio St.3d 207, 216, 527 N.E.2d 1235 (1988). Again, absent some right to the settlement proceeds, which Plaintiffs cannot plausibly allege, Plaintiffs cannot show injury proximately resulting from a failure to disclose the payment of Alacrity's fee and their Breach of Fiduciary Duty claim fails as a matter of law.

Plaintiffs' claim for Breach of a Duty of Good Faith and Fair Dealing also fails to allege a concrete injury proximately caused by a duty owed Plaintiffs by Defendant. Furthermore, this Court has recently determined that Ohio does not recognize a separate cause of action for breach of a covenant of good faith. See *Nachar v. PNC Bank*, 901 F. Supp2d 1012, 1019 (N.D. Ohio 2012).

Plaintiffs allege a claim for declaratory relief, asking the Court to find that Allstate wrongfully withheld insurance proceeds due and owing Plaintiffs. Because the Court has already determined Plaintiffs were not entitled to the proceeds under the plain language of the Policy, this claim fails as a matter of law.

Plaintiffs' Brief in Opposition contains no arguments opposing dismissal of their Constructive Trust claim and the Court finds they have abandoned their claim.[1]

---

[1] Constructive trust is not an independent claim, rather, it is a remedy. See *In re Morris*, 260 F.3d 654 (6th Cir. 2001).

14

**Policy Limitations Period**

While Plaintiffs' claim for entitlement to the actual settlement proceeds/ Work Order amount fails as a matter of law, insofar as Plaintiffs' claims may be read to allege that Plaintiffs did not receive goods of like kind and quality, those claims would be dismissed as outside the limitations period under the Policy.[2]  It is undisputed that Allstate's Policy with Plaintiffs contains a one-year limitation period for bringing suit.  At paragraph 12 of the Policy it reads:

> Suit Against Us
>
> No suit or action may be brought against us unless there has been full compliance with all policy terms.  Any suit or action must be brought within one year after the inception of loss or damage.

Ohio law permits one-year limitation clauses in insurance policies.  "A one-year limitation-of-action clause in an insurance policy is considered reasonable." *Mastellone v. Lightning Rod Mut. Ins. Co.* 175 Ohio App.3d 23, 38 (Ohio App. 8 Dist.,2008) citing *Broadview S. & L. Co. v. Buckeye Union Ins. Co.* (1982), 70 Ohio St.2d 47.

The parties dispute what constitutes the inception of loss or damage under the Policy, triggering the limitations clause.  Allstate argues the triggering event was the water damage to Plaintiffs' property in 2008.  Plaintiff argues it was its discovery of Allstate's payment of 2.8%

---

[2] Plaintiffs'FAC alleges generalized allegations that "Allstate deprived Named Plaintiffs, and Putative Class Members, money, products and services and/or other benefits to which they are entitled to under the Policy." (FAC ¶ 54).  Under the individual claims the FAC appears to clarify by contending that Plaintiffs are entitled to settlement proceeds under the Policy and or Work Order.  The Court does not believe this language presents a claim that by withholding the 2.8% of the proceeds Allstate failed to provide goods of like kind and quality, however, in an abundance of caution, the Court addresses this allegation and finds such a claim, if asserted, would also fail as a matter of law.

of the amount adjusted to fix Plaintiff's property to Alacrity which occurredسسسسسs sometime in 2012.

According to Plaintiffs, the gravamen of its damages claim against Allstate is found in paragraph 53 of their FAC which reads:

> Upon information and belief, when Allstate settles a claim with an insured, such as Plaintiffs herein, it wrongfully pays the amount of the claims proceeds and/or fixed price of the Work Order under the Master Agreement directly to Alacrity, who in turn pays the Contractor the amount of the settlement proceeds/Work Order less Alacrity's 2.8% fee without the knowledge and/or consent of the Policyholder, thus depriving the Policyholder its entitlements under the Policy and the benefit of the bargain under the Master Contract.

Thus, Plaintiffs' alleged damages are their entitlements under the Policy and the benefit of the bargain under the Master Contract.  However, Plaintiffs' claims under the Policy repeatedly contend their damages are the withholding of the 2.8% fee by Allstate deriving from the settlement proceeds and or Work Order amounts.  The Court has already determined Plaintiffs' are not entitled to those amounts since Allstate elected to repair, replace and rebuild Plaintiffs' damages.  While the Court does not believe Plaintiffs' FAC alleges a claim that they did not receive goods of like kind and quality, even if it did, those claims would be time barred by the one-year limitation clause.   At the latest, the Court holds the triggering event to be the discovery of negligent repairs, since this goes directly to any allegation as to the quality of repairs, which were completed in mid-2009.

Attached to the FAC is the Prugar Consulting Report dated March 31, 2011.  The Report outlines numerous problems with the Plaintiffs' property repairs and recounts that Plaintiff Darren Boynton moved back into the dwelling in July 2009 and noticed problems with the repairs six months later.  This indicates that Plaintiffs were aware of any alleged problems with the repairs in December 2009/January 2010.  This lawsuit was filed in July 2012, more than two

16

years later.  Thus, any claims for damages arising from Plaintiffs' contention that by withholding Alacrity's fees the repairs were not of like kind and quality, are outside the limitations period and are time-barred.

Therefore, for the foregoing reasons, the Court grants Allstate's Motion to Dismiss all claims of Plaintiffs.  This dismissal is without prejudice.

IT IS SO ORDERED.

                                                       s/ Christopher A. Boyko  
                                                      CHRISTOPHER A. BOYKO  
                                                      United States District Judge

Dated:  September 20, 2013