# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **DARREN BOYNTON, ET AL.,** | ) | **CASE NO.1:12CV2214** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **ALACRITY SERVICES, LLC ET AL.,** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **Defendant.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

This matter is before the Court on Defendant Alacrity Services, LLC's Motion to Dismiss (ECF # 24).  For the following reasons, the Court grants Defendant's Motion.

According to the allegations in Plaintiffs' First Amended Complaint ("FAC"), Plaintiffs Darren and Jennifer Boynton were insureds of Defendant Allstate Indemnity Co. ("Allstate") pursuant to a Deluxe Homeowners Policy of Insurance ("Policy").  The Deluxe Homeowners Policy provided insurance coverage for Plaintiffs' property located at 3150 Sycamore Drive, Cleveland Heights, Ohio 44118.

On or about December 10, 2008, the Sycamore Drive house flooded, resulting in significant damage.  Plaintiffs made a claim on their policy and Allstate investigated, adjusted the claim and determined the flooding was a covered event.  According to Plaintiffs' FAC, Plaintiffs and Allstate agreed to $106,175.00 for repairs.  Allstate then informed Plaintiffs they could use Allstate's Preferred Contractor Program, wherein the repairs to Plaintiffs' property would be performed by an Allstate approved contractor.

Allstate contracts with Defendant Alacrity for Alacrity's services under the Preferred

Contractor Program where Alacrity serves as the general contractor, supervisor, construction coordinator and/or quality assurance representative.  Alacrity maintains a national network of credentialed contractors and retained Farrow Group to perform the repairs to Plaintiffs' house. Alacrity and Farrow are parties to the AlacNet Master Contract ("Master Contract") which established the respective responsibilities of each.  The Master Contract (attached to the FAC) contains a provision wherein contractors such as Farrow agree to pay Alacrity 2.8% of any Work Order.  Work Orders are issued through the AlacNet and specify the work to be done on behalf of an insured.  Work orders are issued at the sole discretion of Alacrity.  Paragraph 9 of the Master Contract between Alacrity and Farrow states:

> The CONTRACTOR (Farrow) acknowledges and agrees the acceptance of an electronically transmitted Work Order shall act as the Contractor's agreement to perform the work in accordance with the Contract Documents, and constitutes a binding contract for the CONTRACTOR to faithfully execute the Work Order for the firm fixed price contained therein.

The Contract Documents are defined by the Master Contract as the Master Contract, the General Terms and Conditions and each Work Order.  According to the FAC, Alacrity issued Work Order No. 1 to Farrow to perform the repairs.  (FAC ¶ 9).  The Work Order (attached to the FAC) reads in pertinent part:

> the Contractor agrees to furnish, in accordance with the provisions of the Master Contract and Contract Documents incorporated therein, all of the work described in the Contractor's Work Order Scope of Work, attached, which is incorporated herein by this reference, for a lump sum price of $106,175,50.

Also attached to the FAC is a Property Owner's Authorization signed by Plaintiff Darren Boynton.  The Authorization authorizes the Contractor to perform the work described in the Work Order, acknowledges that the Insurer will pay for the covered loss by joint check to the

property owner and Contractor, and acknowledges that the Work Order only applies to covered work under the Insurance Policy.  Farrow began work on January 15, 2009, but according to Plaintiffs, negligently performed the repairs.  Allstate paid the agreed upon amount for repairs to Alacrity.  Alacrity then retained 2.8% of the insurance proceeds and provided the rest to Farrow for the repairs without Plaintiffs' knowledge or consent.  Since that time, Allstate and Plaintiffs have attempted to correct the negligently performed repairs.  According to Plaintiffs, Alacrity's withholding its fee reduces the amount of settlement proceeds Plaintiffs are entitled to and reduces the amount available to the contractor to perform the agreed upon repairs, depriving Plaintiffs of the benefits to which they are entitled under their Policy.

Plaintiffs' FAC alleges causes of action for: 1) Breach of Contract against Allstate, 2) Breach of Contract against Allstate and Alacrity, 3)Conversion against Allstate and Alacrity,  4) Equitable Restitution against Allstate and Alacrity, 5) Fraud against Allstate and Alacrity, 6) Constructive Fraud against Allstate, 7) Breach of Fiduciary Duty against Allstate, 8) Breach of Good Faith and Fair Dealing against Allstate, 9) Constructive Trust against Allstate and Alacrity, 10) Declaratory Relief against Allstate and Alacrity, and 11) Unjust Enrichment against Allstate and Alacrity.

**Civil Rule 12(b)(6) Standard**

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  The court need not, however, accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955 [(2007)], the pleading standard Rule 8 announces does not require "detailed

factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation.  *Id.* at 555.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570.  A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged.  *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully.  *Id.*  Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* at 557.  See also *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007)).  That is, "*Iqbal* interpreted *Twombly* to require more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for relief."  *Weisbarth*, 499 F.3d at 542.  A complaint should be dismissed when it fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

**Alacrity's  Motion to Dismiss**

4

According to Alacrity, all Plaintiffs' claims fail as a matter of law because Plaintiffs cannot plausibly allege any entitlement to the settlement proceeds under their insurance policy with Allstate.  Without such entitlement, Plaintiffs cannot assert any injury.

Furthermore, Alacrity has breached no obligation under the Master Contract nor are Plaintiffs third-party beneficiaries under the Master Contract.  The only obligations imposed on Alacrity under the Master Contract are the obligations to include the Farrow Group in the Network and allow Farrow Group access to AlacNet.  There is no obligation to pay the $106,175.50 to Plaintiffs because the Master Contract was executed nearly one year prior to Plaintiffs' loss.  Alacrity is also not an insurer nor do Plaintiffs allege it to be.  Therefore, Plaintiffs cannot read into the Master Contract any obligation imposed on Alacrity to pay Plaintiffs.  Therefore, Plaintiffs' Breach of Contract claim fails as a matter of law.

Because the money paid by Allstate to Farrow cannot be considered the property of Plaintiffs, no conversion has taken place and Plaintiffs' claim for Conversion against Alacrity must also fail as a matter of law.  Instead, the monies paid by Farrow to Alacrity, per contract, were lawfully obtained by Alacrity.

Plaintiffs' Fraud claim against Alacrity also fails as a matter of law because the FAC fails to allege a misrepresentation made by Alacrity to Plaintiffs upon which they relied to their detriment.  Furthermore, Plaintiffs have failed to plead with the requisite specificity a claim for Fraud.

Plaintiffs' claims for Unjust Enrichment, Restitution, Declaratory Relief and Constructive Trust all fail as a matter of law because Alacrity obtained the money lawfully per contract and Plaintiffs cannot show they were entitled to, or had a possessory interest in, the

monies.

**Plaintiffs' Opposition**

Plaintiffs contend that, accepting as it must all Plaintiffs' allegations as true, the Court must find Plaintiffs' FAC asserts plausible claims against Alacrity sufficient to defeat its Motion to Dismiss.  According to Plaintiffs, the Master Contract places within Alacrity's sole discretion the issuance of Work Orders.  Therefore, the Contractor hired by Alacrity to perform the repairs to Allstate's insured performs through Alacrity.  Furthermore, the Master Contract expressly states, " the policyholder is the sole party obligated to make the payment to the Contractor for work performed under each Work Order issued pursuant to the Master Contract."  Plaintiffs were not obligated to pay Alacrity's fee.  Pursuant to the Terms and Conditions of the Master Contract the Contractor is only entitled to a lump sum payment of the insurance proceeds upon completion of the work.  Furthermore, all payments are to be by joint check made payable to the Policyholder and the Contractor and are to be sent to the Policyholder.  However, Allstate made the payment directly to Alacrity, which deducted its fee and then forwarded the remainder to Farrow.

The Work Order under the Master Contract serves as the "specific agreement between the Contractor, the Insurer, the Network Administrator and the Policyholder with respect to each project." (General Terms and Conditions ¶1(W).  The Work Order states a fixed price performance amount.  Alacrity wrongfully withheld its fee without disclosing it to Plaintiffs.  Plaintiffs never authorized nor approved the withholding of Alacrity's fee.

In addition, according to Plaintiffs, Alacrity cannot assert that Plaintiffs' are not third-party beneficiaries under the Master Contract because the plain language expressly states "the

6

Policyholder is a third party beneficiary of the Contractor's obligations under the Master Contract..."(General Terms and Conditions Pt 1(D).)  Because the Work Order states it is for a firm fixed price of $106,175.50, Plaintiffs did not receive the full value of the repairs of their home because Alacrity retained its 2.8% fee.

Alacrity issues the Work Orders which contain the fixed price amounts but never discloses that its fee is backed out of the amount.  By knowingly misrepresenting the amount of the settlement proceeds, Alacrity is committing fraud.

**<u>Law and Analysis</u>**

Plaintiffs' claims against Alacrity all suffer the same fatal flaw.  Plaintiffs cannot plausibly assert any entitlement to the cash proceeds of the insurance settlement and/or Work Order amounts.  As discussed at length in the Court's Opinion and Order on Defendant Allstate's Motion to Dismiss, Plaintiffs were only entitled to have their damaged property repaired, rebuilt or replaced under Plaintiffs' Insurance Policy with Allstate.  Since Allstate, the issuer of the settlement check, had no duty to give the proceeds to Plaintiffs, and Plaintiffs had no right to the proceeds, any claim for entitlement to the cash value or proceeds must fail as a matter of law and Plaintiffs cannot plausibly assert a right to the proceeds.

Furthermore, the Master Contract's opening paragraph reads: "This AGREEMENT is between Alacrity Services LLC and The Farrow Group."  No other party is a signatory to the Master Contract.  While the Master Contract incorporates the General Terms and Conditions and Work Order, these impose no obligations on Alacrity to Plaintiffs.  Plaintiffs contend the General Terms specifically reference Plaintiffs as a third-party beneficiary to the Master Contract, however, this allegation is belied by the plain language which simply reads that "Contractor

7

agrees and understand that the Policyholder is a third-party beneficiary of the Contractor's obligations under the Master Contract..." Thus, Plaintiffs are, at best third-party beneficiaries to those obligations imposed on the Contractor, not Alacrity. Plaintiffs' third-party beneficiary status is further limited by the "Important Notice" paragraph found on page ii of the General Terms and Conditions wherein it reads:

> These General Terms and Conditions are intended solely for AlacNet℠ use and are not intended for use by any other person, partnership, corporation, or other entity, in whole or in part, without the express written permission of Alacrity Services, LLC. Alacrity Services LLC hereby disclaims any and all responsibility and liability for consequences of any other use or reliance by others on these General Terms and Conditions.

Thus, the clear unambiguous language of the General Terms and Conditions disclaims any third-party beneficiaries to the General Terms beyond what is expressly stated therein. Since the terms only grant third-party beneficiary status on the insured for Farrow's obligations under the Master Contract, Plaintiffs cannot allege third party beneficiary status to any obligation of Alacrity.

There is no provision in any of the Contract documents that imposes an obligation on Alacrity to pay Plaintiffs' anything. There is a clear obligation placed on Farrow to pay Alacrity 2.8% of the Work Order amount. Therefore, any claim for diminished settlement proceeds and or Work Order amounts would run to Farrow not Alacrity.

Plaintiffs' claim for Conversion fails because Plaintiffs cannot demonstrate an ownership interest in the settlement proceeds or Work Order amounts. In Ohio, Conversion "is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. Gen. Motors Corp.,*(1990) 49 Ohio St.3d 93, 96. In order to establish a claim for Conversion a

8

plaintiff must demonstrate the following elements: "(1) defendants' exercise of dominion or control (2) with regard to the plaintiff's personal property (3) exercised wrongfully in denial of, or under a claim inconsistent with, the plaintiff's rights. (Citation omitted).  In addition to these basic definitional elements, "[a] demand and refusal in a conversion action are *usually* required to prove the conversion of property otherwise lawfully held." *Cozmyk Enterprises, Inc. v. Hoy* No. 96-APE10-1380, 1997 WL 358816, 4 (Ohio App. 10 Dist., June 30,1997).  Because Plaintiffs lack an interest in the monies Allstate paid to the Contractor there could not be a conversion.[1]

Plaintiffs' Fraud claim also suffers the same fatal flaw, i.e.- they cannot show entitlement to the proceeds under the Allstate policy or Work Order.  Also, Plaintiffs' cannot show a false representation made by Alacrity to Plaintiffs' intended to produce some reliance.  In Ohio, a Plaintiff must establish the following elements to support a claim of fraud:  (1) a false representation concerning a fact, (2) knowledge of the falsity of the representation or utter disregard for its truthfulness, (3) intent to induce reliance upon the representation, (4) justifiable reliance upon the representation, and (5) injury proximately caused by the reliance. *Crown Property Dev., Inc. v. Omega Oil Co.,* 113 Ohio App.3d 647, 656,( Ohio App. 12th Dist. 1996).

---

[1]    Construing Plaintiffs' allegations as true that they should have been paid the monies directly instead of the proceeds going to Alacrity, Plaintiffs would still be unable to plausibly assert an injury.  There is no dispute that Plaintiffs were obligated to pay Farrow Group the entire $106,175.50 and that Farrow Group was obligated to pay Alacrity 2.8 % of that amount.  Plaintiffs' claim that it should have been paid directly is a distinction without a difference. The undisputed terms of the Master Contract, Insurance Policy and Work Order, if strictly construed and applied, would have achieved the same result.  Alacrity would have received the same 2.8% of the Work Order amount.

Plaintiffs' FAC contends that Alacrity and Allstate misrepresented the amount of settlement proceeds and/or fixed price Work Order amounts the Plaintiffs were actually receiving. Plaintiffs further contend Alacrity had a duty to disclose this and did not.  Because the Master Contract refers to the Work Order as a binding contract for the contractor to faithfully execute the Work Order for the firm fixed price contained therein, Alacrity's withholding of its 2.8% fee without informing Plaintiffs, constitutes a fraud.

Again, the Contract documents attached to Plaintiffs' FAC make clear Plaintiffs have no entitlement to the proceeds of the settlement.  Under Allstate's Policy, Plaintiffs only have an entitlement to repairs.  With no entitlement to the proceeds, Plaintiffs cannot allege that Alacrity's withholding of its 2.8%, undisputedly agreed to by the Contractor in exchange for its inclusion in the AlacNet, diminishes any entitlement of Plaintiffs.  Therefore, no fraud claim survives.

Plaintiffs' Unjust Enrichment, Equitable Restitution and Declaratory Relief claims also fail because Plaintiffs cannot plausibly allege a right to the settlement proceeds and/or Work Order Amounts.  The Work Order expressly states that Farrow agrees to perform the repairs for the sum of $106,175.50.  The Master Contract obligated Farrow to pay Alacrity 2.8% of any Work Order.  Thus, the Work Orders also belie Plaintiffs' allegations that Plaintiffs' were entitled to the Work Order fixed price amount.[2]

Finally, the parties dispute the precedential value of a decision by the United States District Court for the District of Maryland captioned *Smith v. Alacrity Services, LLC* 778 F.

---

[2],       Plaintiffs' FAC also alleges a claim for Constructive Trust.  The Sixth Circuit has previously determined Constructive Trust is a remedy, not a cause of action.  See *In re Morris*, 260 F.3d 654 (6th Cir. 2001).

Supp.2d 606 (D. MD. 2011).  In *Smith*, Plaintiff, on behalf of herself and a class of others similarly situated, alleged claims for Unjust Enrichment and other equitable relief against Alacrity for Alacrity's retention of 2.8 % fee out of insurance proceeds.   Although the *Smith* decision was on summary judgment, the motion was filed before discovery was allowed.   In finding for Alacrity, the Court made the following findings:

Discovery was unnecessary to determine Plaintiff's alleged entitlement to insurance proceeds since those were entirely a creature of contract. (*Id*. at 611).

In finding Plaintiff was not entitled to a particular amount of money from her insured, Alacrity could not have infringed any interest of Plaintiff.  (*Id*. at 610)

Plaintiff's claim to entitlement to a certain amount of money was "a product of someone's imagination." (*Id*.)

Plaintiffs argue that, unlike the Maryland Court, they have before this Court the Work Orders and Master Contract which evidence an obligation by Plaintiffs to pay the Contractor. Specifically, the General Terms and Conditions specifically reads "Unless otherwise authorized by the Insurer, all payments shall be by joint check made payable to the Policyholder and the Contractor and sent to the Policyholder." (General Terms and Conditions 12(D).

 The Court disagrees with Plaintiff's reading and holds that this provision does not impose an obligation on Allstate to pay the proceeds to Plaintiffs.  In fact, the plain language contains limiting language making payment conditioned on the Insurer's preference ("Unless otherwise authorized by the Insurer...").  This conclusion is supported by the plain language of the Master Contract which reads: "Payments shall be made on each individual Work Order in accordance with the business practices of the Insurer." (Master Contract ¶ 5).  Therefore,

11

assuming that Allstate did, in fact, make the payment directly to Alacrity rather than a joint check payable to Plaintiffs and Farrow, Allstate was contractually entitled to do so. Nevertheless, regardless of how payment was made, the entire lump sum of $106,175.50 was ultimately paid to the Contractor, who had committed to pay Alacrity 2.8% of the Work Order. Nothing in any of the supporting documents confers on Plaintiffs rights to the settlement proceeds or Work Order amounts.

Therefore, for the foregoing reasons, the Court grants Alacrity's Motion to Dismiss on all Plaintiffs' claims and dismisses Plaintiffs' claims without prejudice.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  September 20, 2013

12